Patricia NEWHOUSE

v.

Margaret HECKLER, Secretary of Health and Human Services.

Civ. A. No. 83–3064.

United States District Court, E.D. Pennsylvania.

Feb. 7, 1984.

Stephen Skale, Philadelphia, Pa., for plaintiff.

Peggy Hutchinson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

This was an action brought by the plaintiff pursuant to Section 205(g), as amended, 42 U.S.C. § 405(g) to review a final decision of the defendant, the Secretary of Health and Human Services, terminating the plaintiff's receipt of disability insurance benefits under 42 U.S.C. § 423, as amended. The matter is before this court on cross-motions of the parties for summary judgment. For the reasons which follow, the plaintiff's motion for summary judgment is denied, and the defendant's motion is granted.

Plaintiff was found to be disabled commencing December 31, 1979, due to blood clotting and phlebitic conditions of her legs. (Tr. 222 and 223). However, in July, 1982, it was determined that as of June, 1982, plaintiff's impairment was no longer of sufficient severity to prevent substantial gainful activity. (Tr. 226). Plaintiff's benefits were terminated as of the last day of August, 1982. (Tr. 226). In October, 1982 plaintiff requested a hearing challenging the (July, 1982) determination of the Secretary terminating the benefits. (Tr. 125).

The case was subsequently heard by an Administrative Law Judge (ALJ). In a decision dated February 8, 1983, the ALJ found that the plaintiff was no longer impaired so as to preclude the capacity to engage in substantial gainful activity. (Tr. 116 and 117). Hence the ALJ concluded that the plaintiff was not disabled within the meaning of the Act and therefore not entitled to continued disability insurance benefits. (Tr. 117). Thereafter, on March 18, 1983, the Appeals Council denied plaintiff's request for review, thereby making

the decision to terminate the final decision of the Secretary. (Tr. 107). Subsequently the Council received further evidence of plaintiff's November 1982 hospitalization. However, on May 5, 1983 the Council decided that there was no basis for vacating its previous action in the case. (Tr. 3). The issues presently before the court on the parties' cross-motions for summary judgment are as follows:

1. Whether the additional medical evidence, attached as Exhibit A to plaintiff's brief, warrants reversal or remand;

2. Whether the Secretary's final decision determining that plaintiff's entitlement to disability benefits had ceased is supported by substantial evidence.

The standard for determining whether or not a Social Security disability benefits case before this court is entitled to remand is set out in 42 U.S.C. § 405(g). That section provides in pertinent part that "The court may ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding...." In the case *sub judice*, while there is obvious good cause for the evidence of a June 1983 hospitalization and reports which had not been submitted in prior proceedings, the additional evidence submitted by plaintiff fails to satisfy the materiality requirement set out in § 405(g). In *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981) the court stated the following: "The requirement of materiality is an important one. The concept 'material' suggests that the new evidence must be relevant and probative. However, not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing. Thus we hold that a remand to the Secretary is not justified if there is no reasonable possibility that it would have changed the outcome of the Secretary's determination." *Id.* at 679.

In the case *sub judice* the evidence is such that "there is no reasonable possibility" that the Secretary's final decision terminating benefits would change by a consideration of it. In the additional evidence the plaintiff's own treating physician states that plaintiff's phlebitis resolved with treatment. (Exhibit A). Since the additional evidence submitted by plaintiff is of such "limited value" remand based upon it is not justified. *See Chaney*, 659 F.2d at 679.

The United States Court of Appeals for the Third Circuit recently held:

In reviewing final determinations by the Secretary after an administrative hearing, courts are bound by the Secretary's findings of fact if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g) (Supp. V 1981); 1383(c)(3) (1976). Substantial evidence has been defined as such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 [91 S.Ct. 1420, 1427, 28 L.Ed.2d 842] (1971); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979). A person is disabled within the meaning of the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. § 423(d)(2)(A) (1983); 42 U.S.C. § 1382c(a)(3)(B) (1976). Under the Act, the burden of proof as to the medical basis of a finding of disability remains on the claimant at all times, both in the initial proceeding to establish disability and in a subsequent termination proceeding. *Torres v. Schweiker*, 682 F.2d 109, 111 (3d Cir.1982), *cert. denied* [—— U.S. ——] 103 S.Ct. 823 [74 L.Ed.2d 1020] (1983). If a claimant makes a showing that s/he is unable to return to a customary occupation, then the Secretary has the burden of proving that the claimant has the capacity to

perform jobs that exist in the national economy. *Id.* at 111–12; *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979). *Daring v. Heckler,* 727 F.2d 64 (3d Cir.1984).

■ Accordingly, the sole purpose of this review is to determine whether, considering the record as a whole, there is substantial evidence to support the Secretary's findings of fact. *Goldman v. Folsom,* 246 F.2d 776, 778 (3d Cir.1957). However, while the reviewing court may not try the case *de novo,* it is similarly prohibited from abdicating its "conventional judicial function" of assuring that administrative conclusions are rational. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979); *Goldman,* 246 F.2d at 778.

"Disability" is defined in the Act as "any medically determinable physical or mental impairment," 42 U.S.C. § 423(d)(1)(A), which is so severe that the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act provides disability benefits only to those individuals not capable of engaging in substantial gainful employment for the required period of time. 42 U.S.C. § 423(d). In the case *sub judice* plaintiff, in seeking the continuation of her disability benefits, has satisfactorily demonstrated the [continuing] existence of a medically determinable impairment as is required by and defined in the Act. 42 U.S.C. § 423(d)(1)(A), (3); (Tr. 116 and 117). However, the ALJ found that plaintiff failed to show that the impairment continues to prevent the plaintiff from engaging in any substantial gainful activity and de-

termined that the evidence supported a finding that plaintiff is no longer disabled within the meaning of the Act. (Tr. 116 and 117). This court agrees with this determination, finding that it is supported by substantial evidence.

The case *sub judice* is a benefits termination case. Therefore, prior to examining the elements of proof and regulatory standards so that a substantial evidence ruling may be made, it must be determined whether the special burden of production requirements for termination cases have been met. *See Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983). In clarifying the burden of proof requirements in termination cases the Third Circuit in *Kuzmin* stated: "[I]n a termination proceeding, once the claimant has introduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling. Such a presumption ... [i]mposes on the Secretary only the burden of going forward with evidence to rebut or meet the presumption...."

■ "[T]he Secretary [in satisfying its burden] must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." *Kuzmin,* 714 F.2d at 1237. If the above burdens are met then the case proceeds as if it were an initial claim situation. In other words, the ultimate burden of persuasion being on the plaintiff, the case is examined under the substantial evidence standard explained earlier.[1] *See Id.* at 1237–38.

In the case *sub judice* the initial burden of proof has been met. The plaintiff has introduced both medical evidence (*see* Tr. 251–309, 329) and subjective testimony in an effort to show that she remains under a disability impairment. (*See* Tr. 126–156). This is sufficient to satisfy plaintiff's initial burden for as the court in *Kuzmin* states: "The requirement that the applicant intro-

---

1. The court, in *Kuzmin,* also stated that where there is a question as to whether there had been a mistake made in initially awarding benefits "the Secretary must be given the opportunity to

introduce evidence that shows the original decision to have been error." *Kuzmin,* 714 F.2d at 1238. No such question exists in the case *sub judice.*

duce some evidence to show his or her condition remains unchanged or has worsened should not impose any undue hardship. Disability recipients are likely to remain under some medical treatment or supervision." *Kuzmin,* 714 F.2d at 1237. The Secretary has likewise satisfied her initial burden by coming forward with medical evidence indicating improvement in the plaintiff's condition. (*See Tr. 310–32*); *Kuzmin,* 714 F.2d at 1237. Therefore, as stated above, this court must next examine the Secretary's final decision under the substantial evidence standard.

■ There are four elements of proof to be weighed in determining whether there is substantial evidence to support the Secretary's decision: (1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age. *Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir. 1972); *Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir.1962). Through his evaluation of the evidence in the case *sub judice* the ALJ determined that the plaintiff's condition has improved such that she is no longer completely precluded from engaging in substantial gainful activity as a result of her medical impairments. (Tr. 116 and 117).

The pertinent medical evidence in the case comes in the form of reports from several physicians and hospitals. Doctors Fiedler and McNamara are the claimant's treating physicians, and Dr. Schwab (a cardiovascular disease and internal medicine specialist) examined the plaintiff at the request of the Secretary.

In a discharge summary from the Medical College of Pennsylvania and Hospital dated March 18, 1982, signed by Doctors Chow (of the hospital) and McNamara it was reported that plaintiff was in no acute distress. It was further stated that plaintiff's lower extremities revealed no swelling and no tenderness. While the report does state that the surgery plaintiff underwent in 1980 did not "really" improve her phlebitis condition there is no basis given or implied for such a conclusion. (Tr. 297). In examination reports dated April 15, 1982, Dr. McNamara indicates only normal clinical findings regarding the plaintiff's condition. (Tr. 305 and 307).

In a discharge summary from Memorial Hospital Roxborough dated September 12, 1981 Dr. Fiedler diagnosed the plaintiff as having Thrombophlebitis of the left leg. However, as indicated by Dr. Fiedler in that report, all the tests given the plaintiff had normal results. In fact Dr. Fiedler's report states, "Dr. David Naide of the vascular service was consulted and he questioned the actuality of so many recurrent episodes of phlebitis considering the good clinical picture that they presented." (Tr. 283 and 284). In a report dated November 23, 1982, Dr. Fiedler stated that plaintiff has chronic Thrombophlebitis. However, in the same paragraph Dr. Fiedler states, "Her symptoms are mainly subjective and hard to evaluate by concrete physical evidence of disease." (Tr. 329).

Dr. Schwab examined the plaintiff on May 18, 1982 and found her to be in no acute distress. All of Dr. Schwab's clinical findings were normal. The plaintiff was given a cardiovascular treadmill stress test on May 26, 1982, and Dr. Schwab reported that plaintiff performed the test "quite well." (Tr. 322–324). As a result of the clinical findings of his stress testing of plaintiff, Dr. Schwab labeled her exercise capacity as good to excellent. (Tr. 324). Dr. Schwab concluded that "The lady has no evidence of active phlebitis." (Tr. 324).

■ The ALJ has the duty to resolve conflicting medical opinions in carrying out his function of determining whether or not an individual is under a disability. 20 C.F.R. § 404.1526; *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971); *Good v. Weinberger,* 389 F.Supp. 350, 355 (W.D.Pa.1975). In so doing, the ALJ is not bound to accept the plaintiff's own physician's conclusion without weighing it in balance with other evidence, both medical and vocational. *Good, supra,* 389 F.Supp. at 355; *Urgolites v.*

*Finch,* 316 F.Supp. 1168, 1174 (W.D.Pa. 1970). However, the opinion of the treating physician is entitled to a great deal of weight. This is so even where such opinions are unaccompanied by particular clinical tests or findings. *Twardesky v. Weinberger,* 408 F.Supp. 842, 846 (W.D.Pa.1976).

■ In the case *sub judice* the ALJ considered the opinions of the treating physicians but decided that the conclusions offered by Doctors Fiedler and McNamara could not overcome the overwhelming clinical evidence to the contrary. (Tr. 113–116). In light of the fact that all physicians and hospital reports failed to clinically establish "active" phlebitis in any way, and, further, in light of Dr. Schwab's findings it cannot be said that the ALJ erred in not accepting, as dispositive, the treating physician's conclusions of a continuing active disabling phlebitis.

The ALJ also found that the claimant's testimony of subjective complaints of pain was not credible so as to reveal a disabling impairment. (Tr. 115, 117). In so finding the ALJ pointed to the total lack of supporting clinical evidence from even treating physicians as well as the contrary findings of Dr. Schwab's thorough examination. (Tr. 116).

This case is ultimately decided under the Social Security Administration medical and vocational regulations. *See* 20 C.F.R. § 404.1501. The regulations require a five step sequential analysis. 20 C.F.R. § 404.-1520(a). If the criteria of any of the first four steps are met the case is disposed of on that basis. *See* 20 C.F.R. § 404.1520(b–e). If, however, the fifth and final step is reached the factors of age, education, past work experience in combination with residual functional capacity must be considered to determine whether any work may be performed by the claimant. *See* 20 C.F.R. § 404.1520(f).

In the case *sub judice* the ALJ stopped at the second step of analysis and directed a finding of "not disabled." (Tr. 112 and 117); 20 C.F.R. § 404.1520(c). Title 20 C.F.R. § 404.1520(c) provides that the plaintiff must have a severe impairment in order to pass muster at that step of analysis. If plaintiff's impairments do not prevent him/her from doing "basic work activities" then plaintiff is deemed not to have a severe impairment and finding of "not disabled" is directed. 20 C.F.R. § 404.1520(c). "Basic work activities" are defined in 20 C.F.R. § 404.1521(b) as the abilities and aptitudes necessary to do most jobs. Examples of basic mental and physical abilities and aptitudes are given. 20 C.F.R. § 404.1521(b)(1–6). Based upon the evidence presented in this case the ALJ determined that plaintiff's impairments no longer rise to the level of severity so as to prevent her from engaging in basic work activity. That ruling subsequently became the Secretary's final decision. This court finds that the Secretary's final decision is supported by substantial evidence in that such decision is supported by "such relevant evidence as a reasonable mind might accept to support a conclusion." *See, supra, Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427, *quoting, Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197 at 229, 59 S.Ct. 206 at 216, 83 L.Ed. 126. Accordingly, it was not error to terminate plaintiff's benefits as plaintiff no longer remained disabled within the meaning of the Act. Therefore, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.